UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SCHLUTER SYSTEMS, L.P., *a New York Limited Partnership*,

                          Plaintiff,

        v.                                     8:22-CV-155 (TJM/CFH)

SANVEN CORPORATION, et al.,

                          Defendants.

---

**APPEARANCES**:                      **OF COUNSEL**:

Hodgson Russ LLP, Buffalo Office      MELISSA N. SUBJECK, ESQ.
The Guaranty Building                MICHAEL D. ZAHLER, ESQ.
140 South Pearl Street, Ste. 100
Buffalo, New York 14202-4040
Attorneys for plaintiff

Thorpe North & Western, LLP          JED H. HANSEN, ESQ.
175 South Main Street, Ste. 900
Salt Lake City, Utah 84111
Attorneys for plaintiff

Whitewood Law                         SHENGMAO MU, ESQ.
99 S. Almaden Blvd., Ste. 600
San Jose, California 95113
Attorneys for defendant Sanven Corp.

## MEMORANDUM-DECISION & ORDER

    Presently before the Court is plaintiff's motion for alternative service pursuant to Federal Rules of Civil Procedure Rule 4(f)(3). <u>See</u> Dkt. No. 33. Plaintiff seeks to serve defendants Shanghai Shishun E-Commerce, Ltd.; Shanghai Shishun Machinery Equipment Co., Ltd.; Rubao Jia; and Bai Nini (hereafter "Foreign Defendants") "by sending the Summons and Complaint, in both English and Chinese, to the e-mail

address support@vevor.com, to the five email addresses that the Foreign Defendants have used to communicate with the U.S. Trademark Office, and by personally serving three attorneys in the United State [sic] who have represented the Foreign Defendants before the U.S. Trademark Office[.]"  Dkt. No. 33 at 2.  Plaintiff advises that defendant Sanven Corporation, the only defendant who has appeared, expressed that it does not oppose plaintiff's motion for alternative service.  See Dkt. No. 33 at 2-3.   For the reasons set forth herein, plaintiff's motion is denied without prejudice and with leave to renew.

## I.  Background

This action pursuant to 15 U.S.C. §§ 1114, 1114(a), 1125(A); New York General Business Law §§ 349, 350; New York State common law trademark infringement; and New York State common law unfair competition.  See generally Dkt. No. 21 (Am. Compl.).  Plaintiff, "a manufacturer of tile and shower system products," "[U]ses its federally registered orange color in connection with the marketing and advertising of its products as well as on the products themselves."  Dkt. No. 33-2 at 4.  More specifically, plaintiff "owns significant federal and common law rights associated with the color orange,' including the "Orange Mark," which is "registered on the Principal Register as U.S. Registration Number 4,124,207 for use in connection with waterproofing and drainage members for use in connection with tile installations."  Id. at 5.  Plaintiff argues that defendants "work in concert to offer for sale, import into the U.S., distribute, and sell counterfeit products that infringe Schulter's registered trademark rights in its Orange Mark."  Dkt. No. 33-2 at 5.  Defendants also "market and promote the Accused Products

2

on other online platforms, including, but without limitation, Amazon.com and ebay.com." Id. at 5-6.  Plaintiff contends that the "four individuals and entities are responsible for the manufacture and importation of the counterfeit and infringing Accused Product."  Id. at 7-8.[1]

## II.  Legal Standard

Rule 4(f), "Serving an Individual in a Foreign Country," provides:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) [omitted]; or (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f)(1), (3).  "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of the district court." Shanghai Zhenglang Tech. Co. v. Mengku Tech. Co., No. 20-CV-5209(JS)(ARL), 2020 WL 13280555, at *1 (E.D.N.Y. Nov. 18, 2020) (quoting Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd., 312 F.R.D. 329, 330 (S.D.N.Y. 2015)).  Further, "any service must also comport with Constitutional requirements of due process."  Halvorssen v. Simpson, 328 F.R.D. 30, 34 (E.D.N.Y. 2018).

## III.  Argument

---

[1]  Plaintiff provides that defendant Sanven Corporation, who has appeared, "is primarily responsible for receiving the imported goods and shipping them to customers in the United States."  Dkt. No. 33-2 at 6 n.1.

3

Plaintiff argues that alternative service is necessarily because "[e]ven before the added challenges of the COVID 19 pandemic, service in China through the Hague Convention was an extremely time-consuming process with an uncertain outcome." Dkt. No. 33-2 at 11.  Plaintiff provides that "Schluter's own counsel recently experienced delays on a separate litigation matter approaching nearly two years before the Chinese Ministry of Justice stated that it could not or would not effectuate service."  Dkt. No. 33-2 at 11.  Plaintiff further states that the "ongoing impacts of COVID 19 make service in China extremely uncertain," citing to news articles stating that "Shanghai recently tightened its already stringent lockdown measures," leaving many "'confined to their homes with no end in sight.'"  Id.

Next, plaintiff argues that, through searching "documents and filings with the Trademark Office," counsel deduced that the "two entities and two individuals[] reside in China" and that "these four individuals and entities are responsible for the manufacture and importation of the counterfeit and infringing Accused Product."  Dkt. No. 33-2 at 7.  Plaintiff further provides, "[e]ach of the Foreign Defendants is known not only through the information each has provided to the U.S. Trademark Office, but also through their attorney representatives before the Trademark Office and in the early stages of this case."  Id. at 9.  Plaintiff states that Rubao Jiao "has provided the Trademark Office with at least five email addresses with at least five email addresses which he has used to communicate with the Trademark Office."  Id.  Further, Rubao Jiao "has also been represented by two lawyers," one with an address in Maryland and another in New York.  Id.  Plaintiff states that "Defendants have also been represented, in response to Schluter's demand letter," by an attorney based in California.  Id.

4

Next, plaintiff avers that the Foreign Defendants are aware of the lawsuit. Plaintiff provides that before commencing this action, "Schluter sent each of the Defendants a cease-and-desist letter informing them of the seriousness of the matter, including sending a letter to support@vevor.com."  Dkt. No. 33-2 at 9.  "[R]oger Chien, counsel in California, contacted Schluter's counsel and appeared to represent some or all defendants, including the Foreign Defendants."  Id. at 9-10.  Counsel informed plaintiff "that his client had ordered the products and website links to the Accused Products to be withdrawn."  Id. at 10.  Plaintiff argues that this demonstrates that "the demand letter had been received and that the Foreign Defendants were appraised [sic] of the alleged infringement."  Id. at 10.  Plaintiff also notes that "Defendant Sanven, through its counsel, responded with repeated promises that Vevor would take down the offending links," "repeatedly indicated that it was in direct communication with at least some of the Foreign Defendants with respect to this litigation, including email contact using the support@vevor.com address," and "conveyed that its contacts in China are aware of the Complaint, and have even taken some action in response by changing the advertised color of their products."  Dkt. No. 33-2 at 10.  Plaintiff further states that Defendant Sanven, through counsel, "[I]s communicating directly with the Foreign Defendants, including through personal cell phones and/or the Chinese instant messaging app WeChat and through the support@vevor.com email address," but refuses to provide this contact information to plaintiff.  Id. at 10-11.  Plaintiff sent a "demand letter" to defendants at support@vevor.com, among other physical and email addresses.  The e-mail address support@vevor.com "is provided on the Vevor website as a means of contacting the company."  Dkt. No. 33-1 at 2.

5

Plaintiff's counsel states in his declaration, "[w]ithin the last 3 years, my firm has experienced a delay in service through the Chinese Ministry of Justice lsating approximately 15 months, which resulted in the ministry of Justice saying that it could not effectuate service."  Dkt. No. 33-1 at 3.  Due to the "delays and uncertainty endemic to service of process in China, the Foreign Defendants' unequivocal knowledge of this litigation, and the existence of other known and proven methods of communication with the Foreign Defendants" plaintiff demands alternative service of defendants by e-mail "and through U.S. counsel which "comports with notions of due process and is not prohibited by international agreement" and is necessary "for timely service of the [First Amended Complaint]."  Dkt. No. 33-2 at 11-12.  Plaintiff opines that "[s]ervice through the Chinese Ministry of Justice is traditionally a very lengthy and unreliable process which can take many months or years to determine if service will even been attempted."  Id. at 15-16.

Plaintiff urges the Court against requiring that it first attempt service through the Hague Convention, arguing that it is "not 'whimsically seeking alternative means of service,' neither is it attempting to increase the workload of the courts," but is basing its requests "on the very real delays and uncertainty endemic to effectuating service in China" and to "[K]eep this case from needlessly dragging on as part of the Court's docket."  Dkt. No. 33-2 at 17 (citing Ryan v. Brunswick Corp., No. 02-CV-0133E(F), 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)).  Finally, it argues that "[j]udicial efficiency will be best served by allowing the alternative service requested herein, allowing Schluter to pursue its claims rather than wait months or years for an uncertain outcome."  Id.  Thus, plaintiff seeks the Court to "exercise its discretion to grant Schluter

6

the requested alternative service based on Schluter's need for the Court's intervention demonstrated herein." Id.

### IV.  Discussion

As indicated, plaintiff seeks to serve the foreign defendants by sending the summons and complaint, in English and Chinese, to support@vevor.com, "to five email addresses that the Foreign Defendants have used to communicate with the U.S. Trademark Office," and by "personally serving three attorneys in the USA who have represented the Foreign Defendants before the U.S. Trademark Office." Dkt. No. 33-2 at 2.

Plaintiff has not attempted to serve the Foreign Defendants through the Hague Convention.  Instead, as indicated, it seeks the Court to use its discretion to permit alternative service by means of serving the foreign individual defendants and entities by e-mail and through service on United States-based attorneys who have appeared on behalf of some of defendants through filings with the Trademark Office.  There is a split in this Circuit[2] regarding whether e-mail service is permitted where signatories to the Hague Convention object to service by postal channels in Article 10(a).  Plaintiff argues that service by e-mail is not prohibited by international agreement. See Dkt. No. 33-2 at 14-15.  In so arguing, plaintiff cites a Southern District of New York case, Zanghi v. Ritella, 19 Civ. 5830 (NRB), 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020), and a Southern District of California case, Victaulic Co. v. Allied Rubber & Gasket Co., 3:17-CV-1006

---

[2]  The undersigned was unable to locate a case from within the Northern District of New York addressing this distinct issue.

7

(BEN/JLB), 2020 U.S. Dist. LEXIS 82150, at *5-6 (S.D. Cal. May 8, 2020).[3] Id. at 15. In Zanghi, the Court concluded that service was improper under Rule 4(f)(2)(A) "because email is not a permitted method of service under the Hague Convention." Zanghi, 2020 WL 589409, at *5.  In Zanghi, assessing the propriety of alternative service on defendants residing in *Italy* pursuant to Rule 4(f)(3), the Southern District noted that the Hague Convention "does not prohibit service on a foreign defendant's U.S. counsel or service by email." Id. at *6.  As the Court concluded that the Hague Convention did not prohibit service by email and was aware of no other international agreement between the United States and *Italy* prohibiting such service, the Court concluded such e-mail service was not prohibited by international agreement.  See id.[4]

  Plaintiff's brief correctly highlights that many courts in this Circuit have concluded that, where signatories to the Hague Convention object to service by postal channels though Article 10(a), this objection does not cover service by electronic means, leading such courts to conclude that alternative service would be permissible so long as not prohibited by any other international agreement.  See, e.g., Makina ve Kimya Endustrisi A.S., 22 Civ. 3933 (PGG), 2022 WL 3018243, at *5 (S.D.N.Y. July 29, 2022); Mattel, Inc. v. Animefun Store, 18 Civ. 8824 (LAP), 2020 WL 2097624, at *5 (S.D.N.Y. May 1, 2020) ("[T]his Court has held that China's objection to service by postal channels

---

[3] As *Victaulic Co.* is from outside of this Circuit, it is not authoritative.  For completeness of review, the Court notes that this case follows the line of cases that interpret an objection to Article 10(a)'s postal channels as not prohibiting electronic service e-mail because Article 10(a) "does not mention service by email, online messaging system, or other electronic means." 2020 U.S. Dist. LEXIS 82150, at *5.  As discussed in detail, infra, the Court disagrees with this logic.

[4] The Court notes that Zanghi involves a plaintiff seeking to serve on foreign defendants residing in Italy. It is significant to note that, unlike China, Italy has not objected to service by postal channels.  See, e.g., G.A. Modefine, S.A. v. Burlington Coat Factory Warehouse Corp., 164 F.R.D. 24, 25 n.2 (S.D.N.Y. 1995) ("(Article 10 provides that a signatory country can object to the application of this Article, but neither the United States *nor Italy* have registered objections thereto.") (emphasis added).

under Article 10 of the Hague Convention does not encompass service by email and that, further, service by email is not prohibited by any international agreement.") (citing Sulzer Mixpac AG v. Medenstar Indus. Co., 312 F.R.D. 329, 339 (S.D.N.Y. 2015) (declining to "extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email")); Klosin v. E.I. Du Pont Nemours and Co., No 19-CV-109, 2020 WL 1294969, at *2 (W.D.N.Y. July 17, 2020) ("The Hague Convention, to the extent applicable under the circumstances, does not prohibit service on a Chinese company through electronic means.") (citing Sulzer, 312 F.R.D. at 331); Canon Inc. v. yatenshang, No. 21CV01213KAMPK, 2021 WL 8651743, at *2 (E.D.N.Y. July 29, 2021) ("As an initial matter, service by electronic means on defendants in China is not prohibited by international agreement.") (citing Mattel, Inc., 2020 WL 2097624, at *5).

However, recent case law in this Circuit holds otherwise. See Smart Study Co., Ltd. v. Acuteye-Us, __ F. Supp.3d __, 2022 WL 2872297, at *10 (S.D.N.Y. July 21, 2022) (hereafter "Smart Study"). In a thoroughly-researched decision – which included an amicus brief from "Professor Benjamin Liebman, the Robert L. Lieff Professor of Law and Director of Columbia Law School's Hong Yen Chang Center for Chinese Legal Studies" and "Geoffrey Sant, a partner and co-chair of Pillbury Winthrop Shaw Pittman LLP's China Practice" – the Southern District of New York held, "[T]he Hague Convention prohibits service by email on defendants located in China," and decisions holding otherwise were premised on an incorrect interpretation of the Hague Convention. 2022 WL 2872297, at *10. The Smart Study Court noted first that "because the defendants are located in China, a party to the Convention, the Hague Convention applies." Id. at *4. The Court

acknowledged that the Hague Convention does not apply where an address of the defendant is not known, but only where the plaintiff "'exercised reasonable diligence in attempting to discovery a physical address for service of process and was unsuccessful in doing so.'" Id. at *5 (quoting Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018)). After determining that plaintiff failed to "demonstrate[] that it used reasonable diligence to determine the defendants' physical addresses," it concluded that all of the foreign defendants were subject to the Hague Convention. Id. at *6.

The Smart Study Court next observed that China has objected to service by postal channels. 2022 WL 2872297, at *8. It acknowledged that "some courts have determined that service via email, regardless of a country's objections, is precluded under the Hague Convention." Id. at *8 (citing cases). The Court also noted, conversely, that "[S]ome Courts have concluded that service 'by postal channels' encompasses service by email, such that service by email is permissible under the Convention." Id. at *9 (citing Agha v. Jacobs, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008). However, the Smart Study Court disagreed with that interpretation: "[I]f that is the case, however, it must be true that China's objection to service via 'postal channels' would necessarily encompass an objection to service via e-mail." Id. at *9. The Court observed that "[R]ecent guidance posted by Supreme People's Court of China leaves little doubt that China's objection to service by mail would encapsulate service by e-mail." Id. Such guidance states, "In the event that the country where the person to be served is located is a member state of the Hague Service Convention and objects to the service by mail under the Convention, it shall be presumed that the country does not allow electronic

10

service, and the people's court shall not adopt electronic service." Id. The Court concluded that the fact that "Chinese authorities opine that an objection to service by postal channels includes an implicit objection to service by email provides significant support for the view that China's objection to service by postal channels would preclude service by email under the Hague Convention." Id.

The Smart Study Court acknowledged that cases in this Circuit, and even within that District, have held that service by e-mail is permissible where a country objects to service by postal channels, but disagreed with that logic. 2022 WL 2872297, at *9-10 (citing Sulzer, 312 F.R.D. at 332 ("arguably the leading case in this district on this issue"), and citing others). The Court opined that the Hague Convention "is meant to set forth simple and certain methods of service that can be used to serve foreign litigants," and "[T]o infer that the Convention's silence as to a particular method [of service] equates to an implied permission to use virtually *any* method of service not proscribed by the Convention contravenes that purpose." Id. at 10. The Smart Study Court further reasoned that "[T]he effect of a country's objections under Article 10 would be significantly diminished" should the Court adopt the rationale that e-mail service is permitted for countries that objected to service by postal channels. Id. Because "the Convention lays out specific means of service" and countries can raise specific objections to the various methods of service, including service by postal channels by objecting to Article 10(a), the Court opined,

> if the Convention's silence as to a method of service implicitly authorizes that service, there would be no ready way to object to that method of service. Indeed, there would be nothing affirmative to object to. Simply put, the current force of an objection to a method of service in the Convention would be far less effective.

Id. at *10.[5]

The undersigned concludes that Smart Study's logic is sound and chooses to follow this case, rather than the line of district court cases in this Circuit that permitted e-mail service by countries that are signatories to the Hague Convention and object to service by postal channels under Article 10(a).  Thus, the Court first must assess (1) whether the Hague Convention applies, and if so; (2) whether service by e-mail is prohibited by the Hague Convention or other international agreement.  As the United States and China are both signatories to the Hague Convention, to determine whether the Hague Convention applies, the Court must first assess whether plaintiff has demonstrated that it made diligent efforts to locate the foreign defendants' addresses. Smart Study, 2022 WL 2872297, at *5.

If a plaintiff is unable to locate the foreign defendants' addresses, after reasonable efforts, the Hague Convention does not apply. See Western Supreme Buddah Ass'n, Inc. v. Oasis World Peace and Health Found., 08-CV-1374 (TJM/DRH), 2011 WL 856378, at *2 n.3 (N.D.N.Y. Mar. 9, 2011); Kaneka Corp. v. Purestart Chem Enter. Co., No. 16CV4861MKBSIL, 2017 WL 11509784, at *2 (E.D.N.Y. Oct. 17, 2017) ("Article 1 of the Hague Convention specifies that the Convention does not apply when the addresses of foreign defendants are unknown." (quoting Microsoft Corp. v. John Does 1-21, 25-35, and 37-39, No. 12-cv-01335, 2012 U.S. Dist. LEXIS 162122, at *6 (E.D.N.Y. Nov. 13, 2012))

---

[5] Though the Court determined that it does not need to answer whether service by e-mail is permitted under the Hague Convention, generally.  Citing the Supreme Court, however, it noted that that "Articles 11 and 19 provide read tools to permit countries to expressly permit service by email."  2022 WL 2872297, at *8 (citing Water Splash, Inc. v. Menon, 581 U.S. 271 (2017) (additional citation omitted)). "And those articles," the Court continued, "would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention – there would be no need for articles to permit countries to agree to other methods of service, or to legislative to affirmatively authorize other methods of service." Id.

(additional citations omitted)). "'Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so.'" Kelly Toys Holdings, LLC v. Top Dep't Store, 2022 WL 3701216, at *6 (S.D.N.Y. Aug. 26, 2022) (quoting Smart Study, 2022 WL 2872297, at *4) (additional citations omitted). Accordingly, here, the Hague Convention applies unless plaintiff has demonstrated that it is unable to locate the defendants' addresses through diligent efforts.

In Kaneka Corp. v. Purestart Chem Enter. Co., No. 16CV4861MKBSIL, 2017 WL 11509784, at *1, *2 (E.D.N.Y. Oct. 17, 2017), the Court concluded that the Hague Convention did not apply because the plaintiff had demonstrated that it undertook diligent efforts to locate the defendants' physical addresses. The Court noted that "Defendants allegedly thwarted attempts to effectuate service" by "[H]id[ing] its true identity and address [. . .] by, among other things, not registering to do business in China and by providing false corporate addresses on its website." Id. at *2. The plaintiff's investigator also revealed that "no company by the name of 'Purestar Chem Enterprise Co., Ltd' was registered to do business in China and that Purestar's website had a false address for the company." Id. The plaintiff's investigator "visited the address identified on Purestar's website, which is owned by a Huaiqi Pan," and "concluded that the address was a residential apartment, rather than an industrial chemical supply company.'" Id. (internal citation omitted). Based on that provided information, the Court determined that, "despite an investigation into three different locations, Kaneka has been unable to uncover a specific address for Purestar. Accordingly, as Defendant's address is unknown, the

Hague Convention does not apply."[6]; see also Kelly Toys Holdings, LLC, 2022 WL 370216, at *6 (concluding that the Hague Convention did not apply due to the defendant's "unknown" address where the plaintiff demonstrated that it exercised "reasonable diligence" by (1) searching and finding physical addresses for defendants on their websites and shipping labels and sending an investigator to search those locations, who determined that the listed locations were "unconnected" to the defendants, and (2) obtaining local counsel in China who determined that a physical Chinese address that appeared to be connected to the defendants was, in fact, unrelated).

Plaintiff does not argue that the Hague Convention is inapplicable; rather, that its use is likely to be unsuccessful due to recent difficulties with serving through the Chinese Foreign Ministry in another case and due to Covid lockdowns. See Dkt. No. 33-1 at 3 ¶¶7-8.  Here, plaintiff has failed to demonstrate that it took reasonable diligent efforts to locate the defendants' physical addresses.  Although plaintiff states that it sought contact information for the Foreign Defendants from Sanven's counsel, it references seeking "direct contact information" of "personal cell phones and/or the Chinese instant messaging app WeChat."  Dkt. No. 33-1 at 3.  Further, plaintiff details the information it obtained regarding e-mail addresses some of the individual defendants used to contact the Trademark Office and addresses for U.S.-based lawyers who represented some of the defendants either before the Trademark Office or "in response to Schlueter's demand letter," but it does not discuss any efforts to obtain physical addresses.  Dkt. No. 33-2 at

---

[6]  The Court continued, concluding that alternative service by e-mail was permissible on the foreign defendants located in China, stating that "Courts within this Circuit have previously found that service by email on Chinese entities comports with due process," Kaneka Corp., 2017 WL 11509784, at *3. (citing Sultzer, 312 F.R.D. at 331).  As this Court laid out, supra, it disagrees with this logic.  However, the Court's discussion of diligent efforts is not altered by its later discussion of alternative service under Rule 4(f)(3).

14

9. Plaintiff also states, without elaboration, that the demand letter to Defendants in this case was sent to support@vevor.com," "among other physical and email addresses," it does not clarify whether any of those "physical addresses" were for defendants, rather than for U.S.-based attorneys who have represented defendants in other proceedings. Dkt. No. 33-1 at 2 ¶3.  In cases, discussed above, that have addressed the question whether the Hague Convention applies due to unknown addresses, the inquiry involved the efforts taken to locate the foreign defendants' addresses.  As plaintiff has not provided this information, it has not demonstrated that it took reasonably diligent efforts to locate the defendants' physical addresses.  Accordingly, the motion for leave for alternative service is denied with leave to renew.  Any future motion must addressing the efforts taken, if any, to locate defendants' physical addresses.

For purposes of completeness, the Court notes that even if plaintiff had demonstrated that the Hague Convention does not apply due to plaintiff's inability to locate defendants' physical address(es) despite diligent efforts, it would not have permitted alternative service by e-mail.  As this Court has determined that the Hague Convention does not permit service by email on Chinese Foreign Nationals, email service is barred by Rule4(f)(4) because it is "prohibited by international agreement."  FED. R. CIV. P. 4(f)(3).

To the extent plaintiff seeks to effectuate alternative service by serving the U.S.-based lawyers who represented defendants in other venues – such as before the U.S. Trademark Office and in response to a demand letter, plaintiff is advised that any renewed motion for alternative should address whether the lawyers referenced in the instant motion would likely represent the foreign defendants in this action, once properly served.

See Halvorssen, 328 F.R.D. at 34 ("It is worth noting that the method of service sought here, i.e., service on the Venezuelan Defendants' United States Counsel has been held, under appropriate circumstances, to be 'reasonably calculated, under all the circumstances' to provide notice and an opportunity to be heard to the party served.'") (quoting In re GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 267 (S.D.N.Y. 2012) (additional citation omitted)).  Such information is needed in order for the Court to properly assess whether service on the U.S. counsel would "pass[] constitutional muster" by "comport[ing] with the notions of due process." In re GLG, 287 F.R.D. at 267 (quoting Rio Props, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002).  Further, it is not clear to the Court which defendants these lawyers represented.  Therefore, greater clarification will be required so that the Court can properly assess whether the alternative method of serving defendants' U.S.-based attorneys comports with due process.

### V.  Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby **ORDERED**, that plaintiff's Motion for Alternative Service pursuant to Rule 4(f)(3), Dkt. No. 33, is **DENIED without prejudice**; and it is further

**ORDERED**, that the Clerk of the Court Serve this Memorandum-Decision & Order on parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Dated: January 6, 2023
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge